**Jody PORTER, On Behalf of Herself and Others Similarly Situated, Plaintiff,**

v.

**Richard S. SCHWEIKER, In His Official Capacity as Secretary of the Department of Health and Human Services, and Arthur Noot, in his Official Capacity as Commissioner of the Minnesota Department of Public Welfare, Defendants.**

**Civ. No. 4-81-651.**

United States District Court, D. Minnesota, Fourth Division.

Oct. 29, 1981.

The Legal Aid Society of Minneapolis, Inc. by Laurie Davison, Minneapolis, Minn., for plaintiff.

Linda L. Cromwell, Atty. Dept. of Justice, Civ. Div., Washington, D. C., for Federal defendant.

**151**

Warren Spannaus, Atty. Gen., State of Minnesota by Beverly Jones Heydinger, Sp. Asst. Atty. Gen., St. Paul, Minn., for State defendant.

## ORDER

MILES W. LORD, Chief Judge.

The plaintiff brought an action on behalf of herself and others similarly situated to restrain the defendant Noot from utilizing a new recoupment policy for the collection of AFDC benefit overpayments. The defendant Noot originally contended that the new recoupment policy implemented on October 1, 1981, was mandated by a new federal law on the subject, Section 2318 of P.L. 97–35. However, after the defendant Schweiker filed his brief stating that Section 2318 of P.L. 97–35 did not mandate the change in the defendant Noot's recoupment policy and that further, the defendant Noot's former recoupment policy, prior to October 1, 1981, met the requirements of Section 2318 of P.L. 97–35, the defendant Noot conceded the point and agreed to return to the former recoupment policy.[1]

However, the plaintiff and the defendant Noot still disagree on whether the return to the former recoupment policy should be made now or on November 1, 1981. While the defendant Noot stated that he would be willing to send out notices, as soon as possible, to those persons who had their AFDC grants calculated in accordance with the erroneous recoupment policy notifying them that they may be entitled to a refund, he is unwilling to simply reinstate the grants under the correct recoupment policy and send out the refunds immediately.

1. Prior to October 1, 1981, the defendant Noot recovered overpayments by withholding no more than 50% of a family's disregarded earned income from their AFDC grant for any given month. 12 M.C.A.R. § 2.044 F(3)(C). On October 1, 1981, the defendant Noot implemented a new policy under which overpayments of AFDC benefits are recouped by reducing a family's AFDC grant so that the family's gross income plus liquid assets equals 90% of the AFDC standard of need for a family of the same size. The October 1, 1981, policy obviously conflicts with the prior policy set forth in 12 M.C.A.R. § 2.044 F(3)(C) since under the new policy the recipient need have no earned income before the AFDC benefit is reduced. The change in policy on October 1, 1981, resulted in the plaintiff Jody Porter's entire October AFDC grant of $211 being recouped. Under the former policy, her grant would have been reduced by only $50.

Further, the defendant Noot contends that this Court is powerless to compel his agency to reinstate the October 1981 AFDC grants (using the correct recoupment policy) under the edicts of *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). This Court is familiar with *Quern* and with *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) as well as the commands of the Eleventh Amendment, generally. However, this case, at this stage of the proceedings does not fall within the prohibitive confines of the Eleventh Amendment. October AFDC grants are supposed to meet the needs of the recipient's family which arise in October. Although AFDC grants are generally paid on the first of the month, they may be paid or supplemented at any time during the month. Thus, an order requiring reinstatement of October benefits to be completed in October does not provide retroactive relief from the State's Treasury contrary to *Quern, Edelman,* and the Eleventh Amendment. *See, Turner v. Walsh*, 435 F.Supp. 707, 714 fn. 9 (W.D.Mo.1977), aff'd 574 F.2d 456 (8th Cir. 1978). Such a reinstatement is merely a continuance of benefits and has no retroactive effect. 435 F.Supp. at 715.

The harm to the defendant Noot if the Order requiring reinstatement issues is not significant. Since the defendant Schweiker has taken the position that defendant Noot's previous recoupment policy is permissible, there is no risk of loss of federal funds. The defendant Noot claims that it will cost $11,000 to return wrongfully withheld grants to plaintiff and her class. This expense will not cause substantial injury to defendant Noot. There is no evidence that the method suggested by the defendant Noot of sending notices to all class members, informing them that they may be entitled to corrective payments, would cost the defendant Noot any less. The administrative costs would, in all probability, be greater.

The balance of hardship in this case tips decidedly toward the plaintiff and her class. The members of the group of which Jody Porter is representative are people with insufficient funds to meet the financial requirements of reasonable subsistence compatible with decency and health for themselves and their children. It is axiomatic that the reduction and termination of welfare benefits which are designed to permit recipients to financially meet *fundamental needs* for themselves and their children, is irreparable harm. *See, Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). There are, according to the plaintiff, approximately 750 persons in Hennepin County alone whose AFDC benefits were terminated or reduced under the recoupment policy which the defendant Noot now admits was improper; thus, joinder would be impracticable. The claims and defenses of Jody Porter are typical of those of the class members she seeks to represent, and there is no conflict of interest between her and any member of the class. Since all members of the class have been harmed by the application of the same policy, questions of fact and law will be common to the class. Additionally, the defendant Noot's recoupment policy and response to this suit is applicable to all members of the class.

The plaintiff's claims that the defendant Noot should have amended his State Plan for AFDC and obtained approval from the Department of Health and Human Services before changing its recoupment policy. All of the cases cited by plaintiff appear to support this claim. The defendant's response is that a State Plan need not be amended when the change in policy is required by a change in federal law. Since it is clear that the change in the defendant Noot's recoupment policy was not required by federal law, it appears that plaintiff is likely to succeed on the merits.

The defendant Noot concedes that the State's former recoupment policy should have been used to calculate AFDC grants for October but is unwilling to immediately reinstate the grants at the correct level and mail out refunds. To irreparably harm these mothers and their children, depriving them of food and shelter for even two weeks because of an error by the defendant Noot in interpreting the dictates of Section

2318 of P.L. 97–35 would be an injustice. In light of the fact that the interpretation placed upon Section 2318 of P.L. 97–35, by the defendant Noot, requires a strained if not myopic reading,[2] this Court will not permit such an error to harm the mothers who need assistance to feed and clothe themselves and their children for one minute longer than is absolutely necessary to complete the recalculations. The public interest would be disserved if a reinstatement of benefits is not ordered immediately.

THEREFORE, IT IS HEREBY ORDERED that:

1. The plaintiff is permitted to proceed in this matter on a preliminary basis on behalf of a class consisting of all persons in Minnesota whose AFDC benefits have been or will be reduced or terminated as a result of the defendant Noot's policy governing the recoupment of overpayments, as adopted on October 1, 1981; and

2. The defendant Noot, his employees, agents, and assigns are:

a. Enjoined from implementing the new recoupment policy whereby reduction of AFDC benefits is permitted as long as the family's remaining gross income plus liquid assets equals 90% of the standard of need;

b. Ordered to immediately reinstate the pre-October 1st recoupment policy whereby an AFDC grant may be reduced only if a family has disregarded earned income, and in an amount not to exceed 50% of the family's disregarded income;

c. Ordered to immediately reinstate October grants at the September level to class members whose AFDC grants were reduced in the month of October

pursuant to DPW's new recoupment policy;

d. Ordered to take whatever steps are necessary to assure that local welfare agencies implement paragraphs 2b and 2c of this Order by November 1, 1981.

---

2. Section 2318 of P.L. 97–35 provides, *inter alia*:

(22) that the State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan, and, in the case of—

(A) an overpayment to an individual who is a current recipient of such aid, recovery will be made by repayment by the individual or by reducing the amount of any future aid payable to the family of which he is a member, *except that such recovery shall not result in*

*the reduction of aid payable for any month, such that the aid, when added to such family's liquid resources and to its income (without application of paragraph (8), is less than 90 percent of the amount payable under the State plan to a family of the same composition with no other income. . . .* (Emphasis Added.)

The defendant Noot contended that the language emphasized above *required* a reduction of the grant down to the 90% level.